DECISION
{¶ 1} Relator, Glenn O. Slater, filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied relator permanent total disability ("PTD") compensation, and to enter an order granting such compensation. *Page 2 
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ ordering the commission to vacate its order and adjudicate relator's application in accordance with the magistrate's decision. (Attached as Appendix A.) No party has filed objections to the magistrate's decision.
 {¶ 3} Finding no error of law on the face of the magistrate's decision, and based on an independent review of the record, we adopt as our own the magistrate's decision, including the findings of fact and conclusions of law contained in it. Accordingly, we grant a writ of mandamus ordering the commission to vacate its order denying relator PTD compensation and, in a manner consistent with the magistrate's decision, issue a new order that adjudicates relator's PTD application.
Writ of mandamus granted.
 KLATT and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 4} In this original action, relator, Glenn O. Slater, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 4 
Findings of Fact: {¶ 5} 1. Relator has two industrial claims. Claim number 03-843831 is allowed for "sprain lumbosacral; aggravation of pre-existing degenerative disc disease at L3-4 and L4-5 and aggravation of pre-existing degenerative arthritis at L4-5 and L5-S1." This injury occurred on July 28, 2003 while relator was employed as a warehouse worker. That job involved lifting and moving tires.
 {¶ 6} Claim number 00-521909 is allowed for "open would left knee, leg ankle crushing injury lower left leg." This injury occurred on September 8, 2000 when relator was employed as a laborer. His left leg was caught between a tow-motor and a metal pole.
 {¶ 7} 2. On February 6, 2006, relator filed an application for PTD compensation. In support, relator submitted a report dated November 23, 2005 from Arthur M. Amdur, D.O., who wrote:
 It is with a reasonable degree of medical probability that Mr. Slater meets the essential components to validate permanence, and conclude that he is permanently and totally unable to engage in any sustained remunerative employment due to the allowed physical conditions and resultant impairment.
 {¶ 8} 3. Relator also submitted office notes from his attending physician, James P. Kennedy, M.D. Relator also submitted a C-84 from Dr. Kennedy dated August 30, 2004. *Page 5 
 {¶ 9} 4. The PTD application form asks the applicant to provide information regarding his educational status. Relator indicated that he graduated from high school in 1970.
 {¶ 10} 5. The application form also asks the applicant to provide information regarding his work history. Relator indicated that he was employed from 2000 to 2003 at a job described as "Max Trac." The basic duties of this job involved "lifting and stacking large truck tires." Relator also indicated that he was employed at the "Cleveland Clinic Hospital" from 1987 to 2000 and he was employed at "Akron City Hospital" from 1977 to 1987. Relator further indicated that he was employed at "Figler Animal Hospital" during 1977.
 {¶ 11} 6. On June 2, 2006, at the commission's request, relator was examined by Perry Williams, M.D. Dr. Williams examined for all the allowed conditions of both industrial claims. Dr. Williams concluded that the industrial injuries permit only sedentary work.
 {¶ 12} 7. In further support of his PTD application, relator submitted a vocational report dated July 3, 2006, from Mark A. Anderson. In his report, Anderson states:
 * * On June 28, 2003 while employed as a Warehouse Worker at Innovative Employer Leasing, Inc.[,] Mr. Slater was moving tires when he lifted one overhead to toss it and felt a strain in his back. He was treated at an urgent care center where he was prescribed a course of physical therapy. However, his pain persisted. Mr. Slater stated that he returned to work in September 2003 on light duty but was unable to sustain employment due to the pain and resultant physical limitations.
 * * * *Page 6 
 Mr. Slater was employed as a Warehouse Worker at Innovative Employer Leasing, Inc. at the time of his June 28, 2003 work related injury. He has additional work experience as a pathology assistant and veterinary technician. All jobs in the U.S. Economy are listed in the Dictionary of Occupational Titles, (DOT). Accordingly, Mr. Glenn Slater's work history would be classified as follows:

JOB TITLES * * * SKILL LEVEL STRENGTH LEVEL
Material Handler * * * Semi-skilled Heavy
Pathology Assistant * * * Skilled Light
Veterinary Technician * * * Skilled Medium

 There would be no transferable skills developed from any of his past work activities to the sedentary level of exertion.
(Emphasis sic.) Anderson concludes:
 Based on the exertional and non-exertional limitations listed above, it is my opinion that Mr. Glenn Slater has no return to work potential. The medical reports and testing indicate that Mr. Slater is capable of performing less than the full range of sedentary activities.
 The Vocational Diagnosis and Assessment of Residual Employability (VDARE) confirms that Mr. Slater is not employable in the local, state or national economies. Based on his physical impairments and difficulties with reading and math comprehension, Mr. Slater is not a candidate for vocational rehabilitation.
 {¶ 13} 8. Following a July 26, 2006 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 This order is based upon the report of Dr. Williams dated 6/2/2006 and consideration of the Injured Worker's non-medical disability factors.
 Dr. Williams evaluated the Injured Worker on 6/1/2006 regarding the allowed conditions of both claims. It was Dr. Williams' opinion that all the allowed conditions had reached maximum medical improvement; that the allowed conditions *Page 7 
of claim number 03-843831 resulted in 8% whole person impairment; that the allowed conditions of claim number 00-521909 resulted in 4% whole person impairment; and that the allowed conditions of both claims restricted the injured worker to sedentary work.
 Sedentary work means:
 Exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 The 6/2/2006 report of Dr. Williams is found persuasive.
 As the medical evidence is not dispositive of the permanent total disability issue, a discussion of the Injured Worker's non-medical disability factors is necessary. State, ex rel. Stephenson V. Industrial Commission (1987), 31 Ohio St. 3d 161.
 The Injured Worker was born on 5/12/1952 and is currently 54 years of age. This is classified as a "person of middle age" and is found to be a vocationally-neutral factor. While some employers prefer a younger employee with more work-life remaining, other employers prefer an older employee with more work and life experience.
 The Injured Worker was graduated from high school in 1970. This is classified as "high school education or above" and is considered to be a positive vocational factor. Generally, persons with this level of education have the ability in reasoning, arithmetic, and language skills to perform semiskilled through skilled work.
 The Injured Worker's work history is consistent with his educational level. The Injured Worker testified at hearing that he worked as an anatomic pathology assistant (very heavy, *Page 8 
skilled) from 1972 to 1996; as a veterinary technician (very heavy, skilled) in 1977; as a maintenance worker (heavy, semi-skilled) from 1996 to 2000; and as a material handler, the former position of employment in both claims, (very heavy, semi-skilled) from 2000 to 2003.
 The medical restrictions imposed by Dr. Williams preclude the injured worker's return to work at his former positions of employment and all the positions listed on the IC2 and in the injured worker's testimony at hearing. All of the Injured Worker's former jobs exceed the sedentary work range.
 Both files reflect no evidence of the Injured Worker's participation in vocational rehabilitation. The Injured Worker testified at hearing that he was unable to attempt vocational rehabilitation because of his non-industrial carcinoma. However, given the Injured Worker's middle age, high school education, and work history which demonstrates the ability to learn and perform skilled work, the Hearing Officer finds the Injured Worker's failure to explore vocational rehabilitation significantly impedes the Injured Worker's ability to gauge his re-employment potential.
 The Hearing Officer finds the combination of the injured Worker's residual functional capacity for sedentary work, his middle age, his high school education, and his work history which demonstrates the ability to learn and perform semiskilled and skilled jobs indicates the injured worker is not permanently and totally disabled. The Injured Worker has demonstrated the ability to do skilled work, which he testified he learned on the job. The Injured Worker has failed to explore vocational rehabilitation and has made no attempt to be retrained in any jobs in the sedentary work range.
 As the injured worker's strong work history shows the Injured Worker's ability to learn on-the-job skills the Hearing Officer finds that at a minimum the Injured Worker would be able to perform entry-level work in the sedentary work range.
 Based on the above listed physical capacities and non-medical disability factors, this Hearing Officer finds that the Injured Worker's disability is not total, and that the Injured Worker is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained *Page 9 
remunerative employment. Therefore, the Injured Worker's request for an award of Permanent Total Disability benefits is denied.
(Emphasis sic.)
 {¶ 14} 9. On November 9, 2006, relator, Glenn O. Slater, filed this mandamus action.
Conclusions of Law: {¶ 15} Three issues are presented: (1) whether this court must find that the commission failed to consider the reports of Drs. Amdur and Kennedy; (2) whether this court must find that the commission failed to consider the Anderson vocational report; and (3) whether the commission abused its discretion in determining that relator unjustifiably failed to pursue vocational rehabilitation.
 {¶ 16} The magistrate finds: (1) this court must find that the commission did not fail to consider the reports of Drs. Amdur and Kennedy; (2) this court must find that the commission did not fail to consider the Anderson vocational report; and (3) the commission did abuse its discretion in determining that relator had unjustifiably failed to pursue vocational rehabilitation.
 {¶ 17} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 18} Turning to the first issue, the SHO's order states exclusive reliance upon the report of Dr. Williams to support its threshold medical determination that relator is medically able to perform sedentary employment. However, the SHO's order does not address or even mention the reports from Drs. Amdur and Kennedy. Citing State exrel. *Page 10 Noland v. Indus. Comm. (1997), 79 Ohio St.3d 480, and State ex rel.Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327, relator argues that the SHO's failure to mention the reports from Drs. Amdur and Kennedy demonstrates that the commission failed to consider those reports. The magistrate disagrees.
 {¶ 19} In the Fultz and Noland cases, the commission undertook to list in its orders all the evidence it considered. Because relevant evidence was not listed in each of those cases, the court returned those causes to the commission for further consideration of the PTD application.
 {¶ 20} Clearly, Fultz and Noland are distinguishable from the instant case. Here, the SHO did not undertake to list the evidence considered. The SHO addressed only the report that was found to be persuasive — the report of Dr. Williams.
 {¶ 21} In State ex rel. Lovell v. Indus. Comm. (1996),74 Ohio St.3d 250, the court explains Fultz. The Lovell court states that because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings gives rise to a second presumption — that the commission indeed considered all the evidence before it. However, that presumption is not irrebuttable, as Fultz demonstrates.
 {¶ 22} Here, relator has not rebutted the presumption of regularity that attaches to commission proceedings. Therefore, the presumption remains that the commission, through its SHO, did in fact consider the reports from Drs. Amdur and Kennedy. *Page 11 
 {¶ 23} Turning to the second issue, the SHO did not address or even mention the Anderson vocational report. The SHO set forth the SHO's own analysis of the nonmedical factors without reference to the report of a vocational expert.
 {¶ 24} According to relator, this court must find that the commission failed to consider the Anderson vocational report because that report is not addressed in the SHO's order. The magistrate disagrees.
 {¶ 25} The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary because the commission is the expert on this issue. State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266, 271. Thus, the SHO's failure to address the Anderson vocational report does not necessarily detract from the SHO's own analysis of the nonmedical factors. Moreover, given the presumption of regularity, the presumption is that the SHO did consider the Anderson report, but found it to be unpersuasive.
 {¶ 26} The third issue is more problematical than the first two.
 {¶ 27} The Supreme Court of Ohio has repeatedly held that a claimant's failure to undergo rehabilitation or retraining can be a factor for the commission's consideration in a PTD adjudication. State ex rel. Wilsonv. Indus. Comm. (1997), 80 Ohio St.3d 250; State ex rel. Wood v. Indus.Comm. (1997), 78 Ohio St.3d 414; and State ex rel. Bowling v. NationalCan Corp. (1996), 77 Ohio St.3d 148.
 {¶ 28} The Wilson court states, at 253-254:
 We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not *Page 12 
unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.
 {¶ 29} The Wilson court thus recognized that extenuating circumstances can excuse a claimant's nonparticipation in rehabilitation or retraining.
 {¶ 30} In this case, relator sustained his second industrial injury on July 28, 2003. Three days after the injury, on July 31, 2003, relator's treating physician, Dr. Kennedy, states in an office note that, on the date of injury relator continued working, but the next day he was only able to work a half-day. Relator was off work at the July 31, 2003 examination. Dr. Kennedy notes on July 31, 2003 "[w]ill sign him off work."
 {¶ 31} Dr. Kennedy's August 14, 2003 office note records that relator "[i]s now complaining of left leg pain." Dr. Kennedy again notes "[w]ill continue him off work."
 {¶ 32} Dr. Kennedy's August 28, 2003 office note notes that relator "has gotten some mild improvement in his symptoms" and states "[w]ill return to work on Tuesday with light duty."
 {¶ 33} Dr. Kennedy's September 18, 2003 office note states:
 He states he can't do the light duty work that he has. They have him sweeping floors. * * *
 * * *
 I explained to the patient that his options at this point are a series of epidural injections or consideration and referral to be evaluated for a possible lumbar fusion. * * * *Page 13 
 {¶ 34} On April 23, 2004, Dr. Kennedy wrote:
 * * * Subsequently, some time in December or January, he was discovered to have a squamous cell carcinoma of his throat. He has undergone chemotherapy and radiation and has a tracheostomy and a feeding tube now. He has put his back condition on hold because of dealing with his cancer situation. * * *
 {¶ 35} On August 24, 2004, Dr. Kennedy wrote:
 Still having the ongoing back problems. Hasn't pursued any treatment with this because of his neck cancer. States he was on so much medicine, including morphine and codeine, that half the time he didn't even know what day it was and, obviously, his back was under control with this, plus he was going through extensive surgeries and radiation treatment.
 Now is getting ready for another surgery up at the Cleveland Clinic on 09/13/04, removing lymph nodes in his neck. He has a tracheotomy. Still has the ongoing back pain. Because of the mental confusion, constipation and weight loss, he stopped some of the heavy narcotics and his pain has returned. Has lost 84# from his ordeal.
 * * *
 * * * Explained to him that he really should be talking to his doctors about permanent disability[.] * * * Explained to him that, realistically, taking his back and cancer into consideration, this is a permanent situation and there's no way he will return to physical labor. * * * Although we don't have any medical information about his cancer, based on what's transpired, I suspect that this patient is terminal anyway. If he ever gets to the point that he is physically capable of pursuing lumbar treatment, we would get him set back up with Pain Management. * * *
 {¶ 36} Dr. Kennedy's office notes indicate that relator performed light-duty work for his employer in early 2003 and that, in December 2003 or January 2004, relator was diagnosed with throat cancer and was subsequently treated for that condition. *Page 14 
 {¶ 37} On February 6, 2006, some two and one-half years after his second industrial injury, relator filed a PTD application. During the end of the first three months following the second industrial injury, relator unsuccessfully attempted a return to light-duty work. Within two or three months after this failed attempt at returning to light-duty work, relator was diagnosed with throat cancer, according to Dr. Kennedy's reports.
 {¶ 38} The SHO's order of July 26, 2006 indicates that relator testified at the hearing that he was unable to attempt vocational rehabilitation because of his nonindustrial carcinoma. Nevertheless, the SHO held: "[T]he Injured Worker's failure to explore vocational rehabilitation significantly impedes the Injured Worker's ability to gauge his re-employment potential. * * * The Injured Worker has failed to explore vocational rehabilitation and has made no attempt to be retrained in any jobs in the sedentary work range."
 {¶ 39} Apparently, the SHO did not believe that relator's "nonindustrial carcinoma" excused relator from pursuing vocational rehabilitation. However, nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. Thus, if the nonindustrial carcinoma prevented relator from pursuing vocational rehabilitation, the failure to pursue rehabilitation cannot be used to defeat the PTD application.
 {¶ 40} In the absence of any evidence indicating the factual inaccuracy of Dr. Kennedy's reporting of relator's problems with his nonindustrial carcinoma, it is difficult to see how relator can be held accountable for a failure to pursue vocational rehabilitation under these circumstances. *Page 15 
 {¶ 41} If there exists reasoning supported by some evidence for holding relator accountable for his failure to pursue vocational rehabilitation, the commission has failed to provide that in its order. See State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, syllabus. Accordingly, the magistrate finds that it was an abuse of discretion for the commission to hold relator accountable for his failure to pursue vocational rehabilitation absent any reasoning supported by some evidence in the SHO's order.
 {¶ 42} At further issue here is whether the SHO's order sets forth a basis for denial of PTD compensation that is separate from its finding that relator unexcusably failed to pursue vocational rehabilitation. SeeState ex rel. Searles v. Indus. Comm., Franklin App. No. 01AP-970, 2002-Ohio-3097, affirmed 98 Ohio St.3d 390, 2003-Ohio-1493.
 {¶ 43} In Searles, this court states:
 The commission may state separate, alternative grounds for denial of PTD. State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757[.] * * * If the commission does choose to use alternative grounds, "those grounds should not be merged together and should be explained separately so that a reviewing court can understand what has been done." Id. at 761 [.] * * * The commission's decision, in separate paragraphs, details the grounds utilized to deny relator's PTD application. One basis for the denial of PTD was relator's failure to participate in rehabilitation. But the commission also focused on factors that would be assets for relator in obtaining employment. Although the commission did not expressly state that these were all separate reasons for denial, the decision did explain the grounds separately, thereby allowing this court to properly review that decision.
 Even if the commission improperly weighed relator's failure to participate in rehabilitation, we find that there was other *Page 16 
evidence in the record to support the commission's decision to deny relator's PTD application. * * *
Id. at ¶ 5-6.
 {¶ 44} Unlike the situation in Searles, the SHO's order here does not address the failure to pursue vocational rehabilitation in a separate paragraph. Actually, the SHO points to the failure to pursue vocational rehabilitation in the two key paragraphs in which the other nonmedical factors such as age, education and work history are addressed. That is, the SHO's finding of a failure to pursue vocational rehabilitation is intertwined with the analysis of the other nonmedical factors.
 {¶ 45} Given the above analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of July 26, 2006 and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates relator's PTD application.
 KENNETH W. MACKE, MAGISTRATE *Page 1