DECISION
 IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION {¶ 1} Relator, Roy D. Kay, filed this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting compensation.
 {¶ 2} We referred this matter to a magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, *Page 2 
including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) We have received no objections concerning the magistrate's findings of fact, and we adopt them as our own.
 {¶ 3} In brief, relator sustained two industrial injuries, one in 1979 and one in 2002. Relator began vocational rehabilitation, including physical therapy, in 2003, but the rehabilitation plan was closed on May 23, 2003, due to relator's poor attendance and lack of communication. Relator points to evidence, however, that he was unable to participate in rehabilitation due to his medical and psychological conditions.
 {¶ 4} Relator requested rehabilitation again in 2005. Relator's managed care organization ("MCO") initially denied the request, but the bureau of workers' compensation required further assessment of relator's feasibility for rehabilitation. The record reflects no further assessment, however.
 {¶ 5} On December 27, 2006, relator filed an application for PTD compensation. Psychologist Michael A. Murphy, Ph.D., determined that relator's psychological condition was not work prohibitive and indicated that relator had no work limitations. Paul B. Bartos, M.D., determined that relator has a 13 percent whole person impairment based on allowed physical conditions arising from relator's two industrial claims and indicated that relator was capable of sedentary work.
 {¶ 6} A staff hearing officer ("SHO") denied relator's PTD application based on (1) the reports of Drs. Murphy and Bartos and (2) consideration of relator's non-medical disability factors. While the SHO acknowledged the medical reports relator filed in support of his PTD application, the SHO concluded that these reports were not probative because they concerned conditions not recognized in relator's two industrial *Page 3 
claims. As for non-medical considerations, the SHO determined that relator's "residual functional capacity for sedentary work, ability to learn, and varied work experience make him a candidate for rehabilitation and reentry into the workforce. The failure to fully participate in vocational rehabilitation is a significant factor in denying this benefit of last resort." The SHO also stated that "[t]he preponderance of the evidence demonstrates the Injured Worker is not permanently and totally disabled from all sustained remunerative employment." Ultimately, based on both medical and non-medical considerations, the SHO concluded that relator's "disability is not total and that the Injured Worker is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained remunerative employment." The commission denied relator's application for PTD compensation.
 {¶ 7} Before the magistrate, relator argued that "the Commission has abused its discretion by erroneously finding that relator has failed to fully participate in vocational rehabilitation." The magistrate disagreed, concluding that the SHO viewed the closure of the rehabilitation plan as resulting from relator's failure to communicate with his case manager, not just his failure to participate. Because the commission could use this evidence to support denial of relator's application, the commission did not abuse its discretion.
 {¶ 8} In his objections, relator argues that the magistrate failed "to consider the full extent of Relator's attempts to participate in the vocational rehabilitation plan." As the commission asserts, however, relator's argument is beside the point. While relator continues to argue that the commission (and the magistrate) failed to consider that his medical condition contributed to his lack of participation in rehabilitation, relator fails to *Page 4 
explain how his medical condition could have prevented him from maintaining contact with his case manager. As the magistrate indicates, there is evidence that relator failed to inform his case manager of missed appointments and failed to maintain contact with the case manager. We note, too, the SHO's findings that relator had not indicated that he was currently willing to participate in rehabilitation and that his current receipt of Social Security disability benefits was a disincentive for doing so. The commission appropriately relied on all of this evidence to find that relator failed to participate fully in vocational rehabilitation. Therefore, we overrule relator's objections.
 {¶ 9} Based on our independent review of the evidence in this matter, this court overrules relator's objections and adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
 KLATT and McGRATH, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 10} In this original action, relator, Roy D. Kay, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 6 
Findings of Fact: {¶ 11} 1. Relator has sustained two industrial injuries. On August 6, 1979, relator fell from a ladder while employed as a machine operator. The industrial claim (No. 79-28809) is allowed for "contusion of left rib chest area and lower back injury."
 {¶ 12} 2. Relator sustained his second industrial injury while employed as an armed security guard. August 17, 2002 is recognized as the injury date. The industrial claim (No. 02-850536) is allowed for "bilateral plantar fascitis; pain disorder associated with psychological factors and general medical conditions; and for anxiety."
 {¶ 13} 3. On February 7, 2003, relator's treating physician, neurologist Norman W. Lefkovitz, M.D., wrote to relator's managed care organization ("MCO"):
 Roy Kay is under my medical care for a work-related injury that occurred as a result of him working as a security guard in which he sustained bilateral plantar fascitis. The patient continues to have a lot of pain in the "bottom" of both feet, left greater than right. He has been treated with arch supports as well as iontophoresis treatments and anti[-]inflamematory analgesic medications.
 We are formerly [sic] requesting approval for a vocational rehab nurse or counselor to become involved in his management. * * *
 {¶ 14} 4. Dr. Lefkovitz's February 7, 2003 letter was received by the MCO on February 18, 2003.
 {¶ 15} 5. On February 27, 2003, Dr. Lefkovitz wrote: "Still aching in the plantar aspect of both feet, left greater than right. Meds help. To become involved with vocational rehab — physical therapy." *Page 7 
 {¶ 16} 6. On April 11, 2003, Dr. Lefkovitz wrote: "Involved with physical therapy per vocational rehab. Is receiving through physical therapy some ultrasound also. To have foot orthotics made."
 {¶ 17} 7. On May 12, 2003, Dr. Lefkovitz wrote: "Wasn't able to tolerate physical therapy — aggravated symptoms in low back. Awaiting approval for bilateral foot supports."
 {¶ 18} 8. The Ohio Bureau of Workers' Compensation ("bureau") provides a form captioned "Vocational Rehabilitation Closure Report" ("closure report"). On May 26, 2003, an MCO case manager issued a closure report indicating that the rehabilitation plan was closed on May 23, 2003. The closure report states:
 Mr. Kay was referred for services on 2/18/03 and interviewed on 3/3/03. He signed the rehabilitation agreement on 3/3/03. Case manager explained the need for Mr. Kay to contact with any problems during the rehabilitation process and the need to contact with any missed or cancelled therapy appointments. His physician recommended physical therapy, followed by work conditioning. Mr. Kay reported bilateral foot pain and was approved for orthotics for his reported foot problems. He previously had a consult with Dr. Bennett, surgeon and no surgery was recommended. Mr. Kay was very difficult to contact during the rehabilitation process. Case manager initially was able to leave voicemail messages, but after 5/12/03, there was no answer at the home. Mr. Kay began physical therapy on 3/11/03 at Edwin Shaw Hospital. His physician recommended an additional two weeks of physical therapy on 4/11/03, prior to work conditioning. MCO and BW[C] approved the additional weeks to allow time for Mr. Kay to make progress prior to work conditioning therapies.
 Mr. Kay did not attend therapy on the following dates[:] 3/19/03, 4/15/03, 4/16/03, 4/18/03, 4/22/03, 4/24/03, 5/5/03, 5/7/03. Mr. Kay did not contact case manager with cancelled or missed appointments. Case manager attempted to contact Mr. Kay on 5/6/03 from the therapy appointment and left a voicemail message for Mr. Kay to contact regarding not *Page 8 
attending therapy. Mr. Kay's therapist reported Mr. Kay was making slow progress. Upon review of therapy notes, case manager contacted BWC and MCO on 5/9/03 to discuss poor attendance.
 It was determined no further rehabilitation plans would be developed due to poor attendance and difficulty in communicating with Mr. Kay.
 On 5/9/03, case manager received a phone call from Mrs. Kay. She reported Mr. Kay went to the hospital for back pain. Case manager spoke with Mr. Kay and he reported he went to the hospital on 5/8/03 for severe back pain. He reported therapy was of no benefit. Case manager informed no further rehabilitation plans would be submitted. Mr. Kay requested case manager attend next POR appointment for treatment recommendations. On 5/12/03, case manager received a voicemail message from Mrs. Kay requesting case manager attend a POR appointment at 12:30 on same date. Due to case manager's scheduled [sic] and no prior notice, case manager was unable to attend. Case manger obtained office notes, indicating Mr. Kay was unable to attend therapy due to reported back pain. Case manager attempted to reach Mr. Kay on 5/13/03 and 5/16/03, but was unable to leave a message. Case manager [left] a voicemail on 5/21/03, requesting case manger attend POR on 5/22/03 at 1:15 pm. Case manager traveled to POR on 5/22/03. The office staff informed case manager there was no appointment scheduled for Mr. Kay on 5/22/03. Case manager contacted employer of record on 5/22/03 to discuss closure of rehabilitation file. Case closed 5/26/03, non-compliance, recommend IME.
 {¶ 19} 9. The record contains a "State Fund Vocational Monthly Progress Report" stating:
 Mr. Kay was attending physical therapy at Edwin Shaw Hospital outpatient therapy. He has not maintained contact with this case manager. Case manager met with the treating therapist on 5/6/03. Mr. Kay did not arrive for his scheduled therapy on this date, when case manager was present. Case manager obtained therapy notes and reviewed. Mr. Kay did not attend therapy on the following dates: 3/19/03, 4/15/03, 4/16/03, 4/18/03, 4/22/03, 4/24/03, 5/5/03[,] 5/7/03. Case manager attempted to reach Mr. Kay by phone on 5/6/03, *Page 9 
5/8/03 and spoke with Mr. Kay on 5/9/03. He reported severe back pain and inability to attend therapy. Case manager informed Mr. Kay that he was required to contact case manager to be compliant in rehabilitation plan. Mr. Kay reported he went to ER via ambulance and would not be able to continue therapy. * * *
 {¶ 20} 10. In September 2005, relator requested vocational rehabilitation services.
 {¶ 21} 11. On October 18, 2005, the MCO denied relator's request for vocational rehabilitation services.
 {¶ 22} 12. Relator administratively appealed the MCO's denial.
 {¶ 23} 13. On January 25, 2006, the bureau issued an order stating:
 * * * At this time, further assessment of [injured worker's] feasibility would be appropriate. If after finding out the specific disability period and how the sessions would affect the return to work process, he is felt to be not feasible, closure should proceed. At this point it is felt that not enough information was available.
 {¶ 24} 14. On October 20, 2006, Dr. Lefkovitz opined:
 Considering the patient's various allowed conditions in his two claims which included [h]is chronic low back condition which limits his ability to sit for any prolonged period of time and inability to perform any significant lifting or bending activities as well as his plantar fasciitis condition which limits his ability to stand or walk for any length of time has resulted in being totally and permanently impaired from remunerative activity.
 His mental health issues (i.e. depression) is also [a] limiting factor in his ability to perform remunerative activity. Considering all these issues, I again reiterate that Roy is totally and permanently disabled from any form of sustained remunerative employment on a permanent basis as a direct and proximal result of his two work-related injuries as described above. *Page 10 
 {¶ 25} 15. On October 23, 2006, psychiatrist Anil M. Parikh, M.D., responded to a questionnaire. Dr. Parikh indicated that relator suffers from "[depression chronic pain."
 {¶ 26} 16. On December 27, 2006, relator filed an application for PTD compensation.
 {¶ 27} 17. On May 17, 2007, at the commission's request, relator was examined by psychologist Michael A. Murphy, Ph.D., who opined in his eight-page narrative report: "The Injured Worker's psychological condition is not work prohibitive."
 {¶ 28} 18. On an occupational activity assessment dated May 31, 2007, Dr. Murphy indicated by checkmark: "This injured worker has no work limitations."
 {¶ 29} 19. On May 19, 2007, at the commission's request, relator was examined by Paul B. Bartos, M.D. In his narrative report, dated May 22, 2007, Dr. Bartos opined that relator has a 13 percent whole person impairment based upon the allowed physical conditions of both industrial claims.
 {¶ 30} 20. On May 19, 2007, Dr. Bartos completed a physical strength rating form on which he indicated that relator was capable of sedentary work.
 {¶ 31} 21. Following an August 27, 2007 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order explains:
 This order is based on the 5/17/2007 report of Dr. Murphy, the 5/22/2007 report of Dr. Bartos, and consideration of the Injured Worker's non-medical disability factors.
 The Injured Worker was evaluated by Dr. Murphy on 5/17/2007 regarding the allowed psychological conditions of claim number 02-850536. Dr. Murphy found the allowed psychological conditions had reached maximum medical improvement, resulted in a sixteen percent whole person impairment, and were not work-prohibitive. *Page 11 
 Dr. Bartos evaluated the Injured Worker regarding the allowed physical conditions of both claims on 5/19/2007. While the first page of his report does not list "low back injury" as an allowed condition of claim number 79-28809, the body of the report reflects examination and evaluation of the lumbosacral area. Therefore, the report of Dr. Bartos is found to be probative evidence.
 Dr. Bartos found the allowed physical conditions of both claims had reached maximum medical improvement, resulted in a thirteen percent whole person impairment (five percent to the low back and four percent to each foot), and limited the Injured Worker to sedentary level work.
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 The reports of Drs. Bartos and Murphy are found persuasive.
 The Injured Worker's application for permanent total disability benefits was supported by the 10/21/2006 [sic] report of Dr. Lefkovitz regarding the allowed physical conditions and the 10/23/2006 report of Dr. Parikh regarding the allowed psychological conditions. The opinions of these physicians regarding permanent total disability is not found to be probative or persuasive as both physicians are treating the Injured Worker for conditions not presently recognized in either of his claims. In a report dated 2/7/2006 Dr. Lefkovitz indicated the Injured Worker was totally disabled due to lumbosacral degenerative joint disease and in a report dated 7/1/2006 Dr. Parikh indicated the Injured Worker was unemployable due to depression.
 As the medical evidence is not dispositive of the permanent total disability issue, a discussion of the Injured Worker's non-medical disability factors is necessary. State ex rel. Stephenson v. Industrial Commission (1987), 31 Ohio St. 3d 167. *Page 12 
 The Injured Worker was born on 6/3/1950 and is currently fifty-seven years of age. This is classified as a "person of middle age" and is found to be a vocationally-neutral factor. While some employers prefer an employee with more work life remaining, other employers prefer an employee with more work and life experiences.
 The Injured [W]orker was graduated from high school in 1969. This is found to be a positive vocational factor. Generally, a person with a high school education has the ability in reasoning, arithmetic, and language skills to perform semi-skilled through skilled work.
 The Injured Worker received vocational training in high school in metal shop. The Injured Worker worked doing sheet metal layout (medium, semi-skilled) in 1969 and 1970. Also, the Injured Worker received firearm training for which he is certified annually in conjunction with his work as an armed security guard.
 The Injured Worker's work as an armed security guard (light, semi-skilled) spanned from 1990 to 2002. This was the Injured Worker's former position of employment for claim number 02-850536. The Injured Worker's work history also includes work as a machine/press operator (medium, semiskilled) from 1970 to 1987, his former position of employment for claim number 79-28809.
 The Injured Worker's work history is found to be [a] positive vocational factor. It demonstrates the Injured Worker's ability to maintain employment and to do work consistent with his educational level.
 The residual functional capacity for sedentary work as found by Dr. Bartos would preclude the Injured Worker's return to work at any of his former jobs. Therefore, the Injured Worker's efforts to be vocationally retrained are a factor to be considered in this determination.
 The Injured Worker began a vocational rehabilitation program on 3/11/2003. The rehabilitation file was closed on 5/23/2003 due to noncompliance. The Injured Worker had missed eight physical therapy sessions. The Injured Worker re-referred himself to vocational rehabilitation in 2005. That program was not started as the allowed conditions had reached maximum medical improvement and the physician *Page 13 
of record was indicating the Injured Worker was totally disabled at that time.
 The Injured Worker did not respond to the question on the IC2 application regarding whether the Injured [W]orker was currently interested in vocational rehabilitation services. The Injured Worker testified at hearing that he began receiving Social Security Disability benefits in April of 2007. This is found to be a disincentive to being retrained to return to work.
 Permanent total disability is a compensation of "last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." State ex rel. Wilson v. Industrial Commission (1997), 80 Ohio St. 3d 250, 253. The Injured Worker's residual functional capacity for sedentary work, ability to learn, and varied work experience make him a candidate for rehabilitation and reentry into the workforce. The failure to fully participate in vocational rehabilitation is a significant factor in denying this benefit of last resort.
 The preponderance of the evidence demonstrates the Injured Worker is not permanently and totally disabled from all sustained remunerative employment. The Injured Worker has the physical ability to do sedentary work. His allowed psychological conditions do not present any work-related restrictions. He has a high school education and has a long work history performing semi-skilled employment. The Injured [W]orker has not fully participated in vocational rehabilitation or made any attempts to be retrained for employment in the sedentary work range. At the very least, the Injured Worker can perform entry-level sedentary jobs.
 Based on the above-listed physical and psychological capacities and non-medical disability factors, the Staff Hearing Officer finds the Injured Worker's disability is not total and that the Injured Worker is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained remunerative employment. Therefore, the Injured Worker's request for an award of permanent disability benefits is denied.
(Emphasis sic.)
 {¶ 32} 22. On January 11, 2008, relator, Roy D. Kay, filed this mandamus action. *Page 14 
Conclusions of Law: {¶ 33} In its analysis of the nonmedical factors, the commission, through its SHO, found a "failure to fully participate in vocational rehabilitation." The commission viewed this finding as a significant factor in denying the PTD application.
 {¶ 34} The issue here is whether the commission's finding on the question of relator's participation in vocational rehabilitation constitutes an abuse of discretion.
 {¶ 35} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 36} The Supreme Court of Ohio has repeatedly held that a claimant's failure to undergo rehabilitation or retraining can be a factor for the commission's consideration in a PTD adjudication. State ex rel. Wilsonv. Indus. Comm. (1997), 80 Ohio St.3d 250; State ex rel. Wood v. Indus.Comm. (1997), 78 Ohio St.3d 414; and State ex rel. Bowling v. NationalCan Corp. (1996), 77 Ohio St.3d 148.
 {¶ 37} The Wilson court states, at 253-254:
 We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.
 {¶ 38} The Wilson court thus recognized that extenuating circumstances can excuse a claimant's nonparticipation in rehabilitation or retraining. *Page 15 
 {¶ 39} In State ex rel. Slater v. Indus. Comm., Franklin App. No. 06AP-1137, 2007-Ohio-4413, this court found that the commission abused its discretion in determining that the relator, Glen O. Slater, had unjustifiably failed to pursue vocational rehabilitation. InSlater, it appeared from the SHO's order that the SHO did not believe that the relator's "nonindustrial carcinoma" excused him from pursuing vocational rehabilitation. As reported by his attending physician, because Slater had to undergo chemotherapy and radiation and had a tracheostomy and feeding tube, he had to forego rehabilitation aimed at improving his allowed back conditions.
 {¶ 40} As this court noted in Slater, nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. State exrel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. Thus, if the nonindustrial carcinoma prevented Slater from pursuing vocational rehabilitation, the failure to pursue rehabilitation cannot be used to defeat his PTD application.
 {¶ 41} In Slater, this court, speaking through its magistrate, determined that it was an abuse of discretion for the commission to hold Slater accountable for his failure to pursue vocational rehabilitation absent any reasoning supported by some evidence in the SHO's order. InSlater, this court issued a writ of mandamus ordering the commission to vacate its order denying Slater's PTD application and, in a manner consistent with the magistrate's decision, enter a new order that adjudicates the PTD application.
 {¶ 42} Here, relator points to Dr. Lefkovitz's May 12, 2003 office note stating: "Wasn't able to tolerate physical therapy — aggravated symptoms in low back." *Page 16 
 {¶ 43} Given that the low back is not an allowed condition of the claim, relator argues that his failure to fully pursue physical therapy in 2003 must be excused by his low back symptoms.
 {¶ 44} Relator's argument appears to be premised upon his misinterpretation of the closure report and the SHO's reliance upon it. Unlike the situation in Slater, the SHO here did not indicate that he believed that nonallowed conditions could not excuse relator from pursuing vocational rehabilitation. Rather, the SHO determined relator's "noncompliance" from the May 23, 2003 closure report, pointing out that relator "missed eight physical therapy sessions."
 {¶ 45} The May 23, 2003 closure report describes a scenario in which relator failed on multiple occasions to inform his case manager that he would not be keeping his physical therapy appointments.
 {¶ 46} Relator provides no explanation here, nor is there any evidence in the record, to excuse his failure to inform his case manager that he would not be keeping his physical therapy appointments.
 {¶ 47} According to the closure report, relator did keep some of his appointments. Thus, it was appropriate for the SHO to find that relator did not fully participate in the rehabilitation plan.
 {¶ 48} Failing to timely notify the case manager on multiple occasions that a physical therapy appointment would not be kept, for whatever reasons, is indeed some evidence that relator failed, without excuse, to fully participate in the rehabilitation plan.
 {¶ 49} It is the commission that interprets and weighs the evidence. In mandamus, this court does not ordinarily reweigh the evidence for the commission. *Page 17 
Clearly, the May 23, 2003 closure report can be viewed by the commission as evidence that, on multiple occasions, relator failed, without justification, to inform his case manager that his appointments would not be kept. The commission was not required to determine whether missing the appointment was actually justified by either the industrial injury or by nonallowed conditions. The failure to inform the case manager on multiple occasions that an appointment will not be kept can be viewed by the commission as a less than satisfactory effort at pursuing the rehabilitation plan that relator agreed to.
 {¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1